**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| **MICHAEL NEIMEISTER,** **MATTHEW BRANGAN,** **KENNETH ROMALINO,** On behalf of all similarly situated individuals | |
| Plaintiffs, | Civil Action No. 24-411 (ZNQ) (JBD) |
| v. | **OPINION** |
| **THE COUNTY OF SALEM,** **JOHN S. CUZZUPE,** **JOHN DOES 1–50**, | |
| Defendants. | |

---

**QURAISHI, District Judge**

      Plaintiffs brought this civil rights action under 42 U.S.C. § 1983, the New Jersey Civil

Rights Act, N.J. Stat. § 10:6-2, as a class action on behalf of all similarly situated pretrial detainees

in the Salem County Correctional Facility ("SCCF") who were classified as "at-risk" pursuant to

SCCF's suicide identification and prevention policy. (Second Amended Complaint ("SAC"), ECF

No. 5.)[1]  Before the Court is Defendants John S. Cuzzupe and the County of Salem (collectively

"Defendants") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion

to Dismiss" ECF No. 12); Brief in Support of Motion To Dismiss Pursuant to Fed. R. Civ. P.

---

[1] Plaintiff Michael Neimeister also asserts claims solely on his own behalf in Counts Five and Six of the SAC, which are mislabeled as Counts Four and Five after two counts are identified as Count Three.  The Court will refer to the second Count Three as Count Four and correct the subsequent counts accordingly.

12(b)(6) of Defendants, the County of Salem and John S. Cuzzupe ("Defs' Br., ECF No. 12-2); Plaintiffs['] Opposition to Defendants' Motion to Dismiss the Complaint ("Pls' Opp. Br." ECF No. 18) and Reply Brief in Further Support of Motion Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) of Defendants, the County of Salem and John S. Cuzzupe ("Defs' Reply Br." ECF No. 19).

The Court has federal question jurisdiction over Plaintiffs' claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

## I.   <u>PROCEDURAL HISTORY</u>

On January 24, 2024, Plaintiff Michael Neimeister ("Neimeister") filed a complaint as the sole lead plaintiff and a member of a class of similarly situated individuals in this putative class action that alleges pretrial detainees were unlawfully admitted to SCCF's "at-risk" unit. (Compl., ECF No. 1.) Plaintiff Robert Strauss, III was added as a lead plaintiff in the Amended Class Action Complaint, filed on February 16, 2024. (Am. Compl., ECF No. 3.) On March 12, 2024, Plaintiffs Neimeister, Matthew Brangan ("Brangan"), and Kenneth Romalino ("Romalino"),[2] filed the SAC against John S. Cuzzupe ("Cuzzupe"), John Does 1–50 ("John Does"), and the County of Salem ("Salem County") (ECF No. 5.) Defendants Cuzzupe and John Does were sued in their official and individual capacities. (*Id.*) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

---

[2] Robert Strauss is not a named plaintiff in the SAC. (ECF No. 5.)

## II.    SECOND AMENDED COMPLAINT

Plaintiffs allege the following facts in the SAC.  Neimeister and Brangan were class members in a predecessor class action, *Nedrick v. Salem County, et al.*, No. 1:22-cv-05153 (D.N.J.) ("Nedrick) and unsuccessfully attempted to intervene.  (SAC, Parties, at ¶¶ 1-2, Class Allegations, at ¶ 8(a).)  They filed this action to preserve their rights and those of the class members, alleging "The Class Period begins two years prior to the filing of the Complaint in Nedrick v. Salem County or two years prior to the filing of the motion to amend filed November 13, 2023 in that matter and until such time as Salem County complies with the law."  (*Id.*, Class Allegations, at ¶ 8(a).)  Plaintiffs Neimeister, Brangan and Romalino seek to represent three classes of pretrial detainees who were designated "at-risk" upon admission to SCCF during the class period.  (*Id.*, ¶ 8.)

In Counts One through Three of the SAC, Plaintiffs allege that SCCF's strip-search policy violates the United States Constitution, New Jersey Constitution and New Jersey statutes and regulations pertaining to strip searches.  (SAC, at ¶¶ 207–231.)  In Count Four of the SAC,[3] Plaintiffs allege SCCF's suicide identification and prevention policy arbitrarily overclassifies pretrial detainees as "at-risk," resulting in punishment that violates the Fourteenth Amendment, in contravention of 42 U.S.C. § 1983, N.J. Stat. § 10:6-2,[4] and Article I, ¶ 1 of the New Jersey State

---

[3] *See supra* n. 1.  The Court will refer to the second "Count Three"  "Unlawful Punishment of Pretrial Detainees Based Upon An Arbitrary Classification. . ." as "Count Four" of the SAC.
[4] The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution.  *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).  "Because § 1983 claims and NJCRA claims are analyzed nearly identically," district courts may analyze the claims together.  *Telzer v.*

Constitution. (SAC, at ¶¶ 22, 226–231.)  The at-risk classification is arbitrary because SCCF's policy is not approved by a mental health professional.  (*Id.*, at ¶¶ 23, 35.)  Although SCCF has a contract with the Center for Family Guidance ("CFG") to provide mental health services, CFG does not have authority to alter the terms of SCCF's suicide identification and prevention policy ("the policy").  (*Id.*, at ¶¶ 46-47.)

The policy requires corrections officers ("COs") to administer a questionnaire to pretrial detainees when they are admitted to SCCF.  (*Id.*, at ¶ 27.)  The questionnaire is comprised of mostly objective "yes/no" questions.  (*Id., at* ¶ 26.)  Cuzzupe assigns a numerical value to each questionnaire response by using an answer key.  (*Id.*, at ¶ 40.)  A score of 50 points or above qualifies an individual as "at-risk" for self-harm.  (*Id.*, at ¶¶ 44–45.)  Plaintiffs allege Cuzzupe is not qualified to perform this function.  (*Id.*, at ¶ 42.)  They further allege COs are unqualified to make assessments of detainees based on subjective considerations of suicide or homicide risk.  (*Id.*, at ¶ 27.)  CFG expressed concerns to Cuzzupe that the questionnaire overclassifies.  (*Id.*, at ¶ 48.)

A pretrial detainee's "at-risk" classification results in punishment because conditions in the at-risk unit are substantially different from those in the general population.  (*Id.*, at ¶¶ 226–28.)  In the at-risk unit, pretrial detainees are stigmatized, subjected to constant electronic surveillance, cross-gender observation of all daily life, routine strip searches, squalid conditions, and they are denied clothing except a suicide vest.[5]  (*Id.*, ¶ 32(a–f).)

---

*Borough of Englewood Cliffs*, 783 F. App'x 253, 257 (3d Cir. 2019) (per curiam) (citations omitted).

[5] Plaintiffs variously describe the suicide garment as a vest, gown, smock or jacket. (SAC, at ¶¶ 32(d), 75, 108, 109, 139, 142, 149, 177.)  The Court assumes these terms are describing the same type of garment, which the Court will refer to as a vest, for the sake of consistency.

The at-risk unit cells for men were designed for four but were overcrowded, with five to fifteen men sharing one toilet. (*Id.*, at ¶ 84.) Plaintiffs were housed with others who were suffering from substance withdrawal, with symptoms of vomiting and diarrhea. (*Id.*, at ¶ 85.) They were not allowed access to cleaning materials. (*Id.*, at ¶¶ 86–87.) Plaintiffs had to eat in these cells without tables or chairs. (*Id.*, at ¶ 89.) The lights were always on, depriving Plaintiffs of sleep. (*Id.*, at ¶¶ 90, 92.) The temperatures were inordinately low. (*Id.*, at ¶ 91.) In contrast, detainees in the general population were housed in sanitary cells with tables and chairs. (*Id.*, at ¶¶ 84–85, 89.)

Upon escort to the "at-risk" unit, each Plaintiff was directed to a shower room where they were strip searched by COs outfitted with body worn cameras. (*Id.*, at ¶¶ 72–73.) These strip searches were subsequent to strip searches conducted upon Plaintiffs' admission to SCCF. (*Id.*, at ¶ 74.) The subsequent searches were unnecessary because Plaintiffs had no intervening opportunity to obtain contraband. (*Id.*) It is also SCCF's policy to strip search detainees when they leave the cell. (*Id.*, at ¶ 80.) However, they are often not permitted to leave their cells for days at a time. (*Id.*, at 82.)

In the at-risk unit, Plaintiffs were required to wear a suicide vest with no undergarments. (*Id.*, at ¶ 75.) Neimeister complains that his suicide vest was uncomfortable, too small, lacked functional fasteners, and was immodest. (*Id.*, at ¶ 109.) Brangan was also given a suicide vest upon his admission. (*Id.*, at ¶ 146.) He was escorted to the at-risk unit wearing a suicide vest without functional fasteners or undergarments, leaving him exposed. (*Id.*, at ¶¶ 147–48, 151-53.) His complaints were disregarded by the CO who escorted him. (*Id.*, at ¶¶ 149–50.) Plaintiff Romalino was also given a suicide vest without undergarments or functional fasteners. (*Id.*, at ¶¶ 184-85.)

5

Plaintiffs allege detainees who are charged with non-indictable offenses are protected under N.J. Stat. Ann. § 2A:161(a) against strip searches performed in the presence of someone who is not authorized to conduct the search (Count Three).  (*Id.*, at ¶ 221.)  SCCF violated this law by strip searching detainees in the presence of other detainees and on live-feed CCTV cameras, where video footage was accessible to individuals of the opposite gender, who were not involved in the strip-searches.  (*Id.*, at ¶¶ 96–97, 221-22.)

Upon admission to SCCF around February 2022, Plaintiff Neimeister was subjected to a body image scan and strip search.  (*Id.*, at ¶¶ 98–99.)  He was first detained alone in a cell and classified "at-risk" pursuant to SCCF's suicide identification and prevention policy.  (*Id.*, at ¶¶ 100–01.)  He was then escorted to a shower room in the "at-risk" unit, where he was strip searched again.  (*Id.*, at ¶¶ 104–07.)

Neimeister, who was chemically dependent, suffered from seizures at SCCF.  (*Id.,* at ¶¶ 119–122).  [John Doe] Defendants denied him medical treatment for his known chemical dependence, but they eventually transported him to Salem Hospital.  (*Id.,* at ¶¶ 121, 123–24.)  After discharge from the hospital, Plaintiff was returned to SCCF's at-risk unit, where he again suffered from seizures and was returned to the hospital.  (*Id.,* at ¶¶ 125–27.)  Neimeister asserts an individual cause of action under New Jersey's Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 *et seq.*, alleging Defendants had a duty to treat his chemical dependence because it is a disability.  (*Id.,* at ¶¶ 232–36.)

Brangan alleges there was fecal matter throughout the cell he shared with approximately fifteen other detainees in SCCF's at-risk unit.  (*Id.,* at ¶ 156, 159.)  He repeatedly complained about the condition of the cell when the COs did their rounds.  (*Id.,* at ¶ 160.)  Brangan was sleep-

deprived from constant illumination in his cell.  (*Id.,* at ¶¶ 164–65.)  After three days in the at-risk unit, Brangan was evaluated by a mental health professional who determined that he was not at-risk for self-harm.  (*Id.,* at ¶ 166.)  Nonetheless, Brangan remained in the at-risk unit because he was suffering from withdrawal, with symptoms of cold sweats, diarrhea and vomiting.  (*Id.,* at ¶¶ 167, 169.)  Brangan was "arbitrarily denied his medication." (*Id.,* at ¶ 168.)

Romalino was admitted to SCCF around September 2023.  (*Id.,* at ¶ 170.)  Upon information and belief, Romalino's suicide questionnaire results exceeded 50 points, which led to his at-risk classification.  (*Id.,* at ¶ 173.)  Romalino was held in isolation in a cell in SCCF's admissions unit.  (*Id.,* at ¶ 174.)  He was later detained in the "at-risk" unit for approximately three days.  (*Id.,* at ¶ 179.)  Romalino shared an unsanitary cell with inadequate toilet facilities with as many as fifteen other detainees (*Id.,* at ¶¶ 188, 192.)  He was generally denied the opportunity to leave the cell, with the exception of two short intervals.  (*Id.,* at ¶ 197.)  Romalino suffered from withdrawal because he was denied his prescription for suboxone.  (*Id.,* at ¶ 191.)  He suffered from anxiety and distress from the conditions of confinement.  (*Id.,* at ¶ 198.)  Romalino was seen by a mental health professional on his second day of confinement at SCCF, and he was transferred to a different facility on the third day.  (*Id.,* at ¶¶ 203-04.)   Romalino was not classified at-risk in the new facility.  (*Id.,* at ¶ 205.)

### III.    <u>MOTION TO DISMISS STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 560 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

7

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal.*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id.*, at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . ." *Twombly*, 550 U.S. at 555. However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (cleaned up). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

8

IV.    **DISCUSSION**

A.    **Class Allegations and Definitions**

Defendants seek to strike all references in the SAC to a predecessor class action, *Nedrick*, in which Neimeister and Brangan unsuccessfully attempted to intervene.  (Defs' Brief, at 5.) Defendants contend Plaintiffs' allegations on behalf of the *Nedrick* class members are improper because Plaintiffs were not permitted to file a Second or Third Amended Complaint in *Nedrick*. (*Id.*)  Defendants further allege "Plaintiffs are not permitted to latch onto the alleged class period in *Nedrick* to attempt to wind the clock back on this litigation by two years."  (*Id.*, at 6.)

In opposition, Plaintiffs argue "the Order dismissing *Nedrick* without prejudice expressly preserved the rights of the putative class—collateral estoppel."  (Pls' Opp. Brief, at 32–35).[6] Second, Plaintiffs argue they "had the right to relation back under Fed. R. Civ. Pro. 15(c) prior to the dismissal without prejudice [in *Nedrick*]."  (*Id.*, at 35–40.)  In reply, Defendants contend: (1) "Plaintiffs should not be permitted to consolidate this matter with *Nedrick*"; (2) "Plaintiffs are not entitled to collateral estoppel"; and (3) Plaintiffs Misapply Fed. R. Civ. P. 15."  (Defs' Reply Br. at 1–5.)

"In this District, 'dismissal of class allegations at [the pleading] stage should be done rarely and [] the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (quoting *Horowitz v. AT&T Inc.*, Civ. No.

---

[6] Plaintiffs' Opposition Brief is unpaginated.  (ECF No. 18.)  Therefore, pinpoint cites are to the page numbers assigned to the brief by the Court's electronic case management system, CM/ECF.

3:17-cv-4827, 2018 WL 1942525, at *17 (D.N.J. April 25, 2018)).  "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Id.* (quoting *McPeak v. S-L Distrib. Co.*, Civ. No. 12-348, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (citations omitted)).  Accordingly, the Court will deny without prejudice Defendants' motion to strike references to *Nedrick* in the class allegations.

### B.  Fourth Amendment Claim of Unreasonable Strip Search Policy or Practice

In Count One of the SAC, Plaintiffs allege Salem County's strip search policy or practice violates the Fourth Amendment of the United States Constitution and Article I, ¶ 7 of the New Jersey Constitution because detainees are routinely strip searched "after they were already strip searched with no intervening opportunity to obtain contraband."   (SAC, at ¶ 212.)  Defendants argue Plaintiffs failed to plead sufficient facts regarding the frequency of strip searches or details concerning the inability to obtain contraband between strip searches.  (Defs' Br., at 7.)  Plaintiffs alleged they were detained in overcrowded cells with five to fifteen people; thus, Defendants submit there was a potential to obtain contraband from others in the cell.  (*Id.*)

In opposition to dismissal of their Fourth Amendment unreasonable strip search policy or practice claim, Plaintiffs allege they were detained in a closed custody unit under constant surveillance, where everyone is strip searched.  (Pls' Opp. Br., at 40.)  Defendants can infer from the SAC that Plaintiffs were strip searched at least twice daily.  (*Id.*, at 40–41.)  Plaintiffs further contend, if the Court finds their allegations insufficient, they can allege additional facts about their strip searches.  (*Id.*, at 42 n. 7.)  Defendants do not address Count One of the SAC in their reply brief.  (Defs' Reply Br., ECF 19.)

Inmates have a limited right of bodily privacy under the Fourth Amendment, subject to reasonable intrusions necessary in the prison setting. *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). The contours of the right are very narrow. *Id.* at 326. "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id. at 326* (citing *Florence v. Board of Chosen Freeholders of the County of Burlington, et al.* ("*Florence II*") 566 U.S. 318 (2012)).[7] If a search policy strikes a reasonable balance, it is constitutional. *Id.*

"[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Id.* (quoting *Florence II*, 566 U.S. at 328). Because "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials . . . courts should ordinarily defer to their expert judgment in such matters" in the absence of "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations." *Parkell*, 833 F.3d at 326 (quoting *Florence II*, 566 U.S. at 328).

Under this deferential standard, the Third Circuit in *Parkell* denied summary judgment to the defendants because they were "unable to articulate a single plausible theory as to how inmates . . . would have thrice-daily opportunities to smuggle in contraband from outside their cells or use

---

[7] Affirming *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 621 F.3d 296, 311 (3d Cir. 2010) ("*Florence I*").

unsupervised time in their locked cells to transform a harmless object into something dangerous." *Id.* at 327.  In other words, there was substantial evidence in the record to indicate the officials exaggerated the dangers posed by contraband.

Here,  Neimeister, Brangan and Romalino alleged they were strip searched upon admission to SCCF and strip searched again upon admission to SCCF's at-risk unit, without an opportunity to obtain contraband between the searches.  (SAC, ¶¶ 98-176.)  This is sufficient to state a Fourth Amendment claim.  Plaintiffs further allege routine strip searches in the at-risk unit were conducted under electronic surveillance, the CCTV system.  (*Id.*)  It is reasonable to infer electronic surveillance of the strip searches serves no purpose because the strip searches by staff would reveal any hidden contraband.  Therefore, the Court will deny Defendants' Motion to Dismiss as to Count One of the SAC, regarding strip searches conducted without an opportunity to obtain contraband between searches.  Insofar as Plaintiffs allege other "routine strip searches" in the at-risk unit violated the Fourth Amendment, they have not pled sufficient facts to establish they had no opportunity to obtain contraband prior to those strip searches.  The Court will dismiss Plaintiffs' Fourth Amendment claim regarding "routine strip searches" without prejudice, with leave granted for Plaintiffs to file a Third Amended Complaint to cure the deficiencies in this claim by pleading additional facts.

## C.    Prospective Injunctive Relief

In Count Two of the SAC, Plaintiffs assert a claim under the NJCRA against Salem County because its strip search policy permits strip searching detainees who were "arrested for commission of an offense other than a crime" without reasonable suspicion they possess contraband in violation of N.J.S.A. § 2A:161A-1(c) and § 2A:161A-8.  (SAC, ¶¶ 215-19.)  In Count Three of the SAC,

Plaintiffs allege Salem County's strip search policy, which permits strip searching non-indictable detainees in the presence of other detainees and/or under CCTV cameras, violates N.J.S.A. § 2A:161A-4 and § 2A:161A-8. (*Id.*, at ¶¶ 220-23.)

In support of their Motion to Dismiss Count Two, Defendants assert Plaintiffs have not pled they were detained at SCCF on non-indictable offenses, and therefore, they did not suffer an injury. (Defs' Br., at 8.) Plaintiffs concede they are not adequate class representatives under Fed. R. Civ. P. 23(b)(3).[8] (Pls' Opp. Br., at 42.) However, they seek prospective injunctive relief based on their fear that future admission to SCCF on non-indictable charges would subject them to SCCF's strip search policy. (*Id.*, at 43.) On this basis, Plaintiffs contend they are adequate class representatives under Fed. R. Civ. P. 23(b)(2).[9] (*Id.*) Finally, Plaintiffs argue this issue is properly deferred until class certification. (*Id.*)

Defendants view Plaintiffs' concession that they are not adequate class representatives under Fed. R. Civ. P. 23(b)(3) as a basis to dismiss Counts Two and Three of the SAC with prejudice. (Defs' Reply Br., at 8.) Defendants argue Plaintiffs' fear of future arrest on non-indictable charges is an admission Plaintiffs were arrested on indictable charges. (*Id.*) Defendants

---

[8] Fed. R. Civ. P. 23(b) describes types of class actions, and subsection (3) pertains to actions where, in pertinent part, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

[9] Fed. R. Civ. P. 23(b)(2) provides that a class action satisfying subsection (a) may be maintained "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

further contend permitting Counts Two and Three to go forward would be akin to allowing Plaintiffs to proceed on a slip and fall case, although they did not slip or fall. (*Id.* at 9.)

The Court agrees class determinations under Fed. R. Civ. P. 23(b)(2) and (b)(3) are premature. Nevertheless, the Court is required to satisfy itself of Plaintiffs' Article III standing to assert claims for prospective injunctive relief. *See*, *e.g.*, *Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016) ("we must determine on our own whether standing exists.") There are three elements requisite to standing:

> (1) the invasion of a concrete and particularized legally protected interest and resulting injury in fact that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, meaning that the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A plaintiff bears the burden of establishing that he has Article III standing for each type of relief sought." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Finkelman*, 810 F.3d at 195.

"When . . . prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "The threat of injury must be sufficiently real and immediate[.]" *Id.* (quoting *Roe v. Operation Rescue*, 919 F.2d 857,

864 (3d Cir. 1990) (cleaned up)).  "Allegations of 'possible future injury' are not sufficient to satisfy Article III's standing requirement."  *Goode v. Gioria*, 590 F. App'x 120, 121 (3d Cir. 2014) (per curiam) (quoting *Reilly v. Ceridian* Corp., 664 F.3d 38, 42 (3d Cir. 2011)).  Relevant here, courts assume the litigants will abide by the law in the future and not subject themselves to the challenged conduct.  *See, e.g.*, *Lyons*, 461 U.S. at 103.  Therefore, Plaintiffs' fear of future arrest on non-indictable offenses and readmission to SCCF is too speculative to support standing for prospective injunctive relief.  The Court will dismiss Counts Two and Three of the SAC for lack of jurisdiction.

**D.    Fourteenth Amendment Substantive Due Process Claims**

In Count Four of the SAC, Plaintiffs allege their arbitrary classification to the at-risk unit in SCCF constituted punishment in violation of the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, the New Jersey Constitution and the NJCRA.  (SAC, at ¶¶ 224-31.)  Defendants seek dismissal of Count Four for failure to state a claim of unconstitutional punishment because the allegations in the SAC are too general, and in some instances, not relevant.  (Defs' Br., at 10-15.)

With respect to Plaintiffs' Fourteenth Amendment strip search claims, the "more specific provision rule" applies.  The "more specific provision rule[,]" requires that constitutional claims governed by a specific constitutional provision—for example, a Fourth Amendment unreasonable search claim—must be analyzed under the more specific provision, rather than as a substantive due process claim.  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)).  Therefore, the Court will grant

Defendants' Motion to Dismiss Count Four, as to Plaintiffs' claims that the strip searches in SCCF's at-risk unit violated their substantive due process rights.

Defendants further contend Plaintiffs have not alleged the conditions in the at-risk unit were sufficiently serious to be excessive in relation to the purpose assigned, to protect at-risk detainees from harming themselves or others.  (*Id.*, at 12–14.)  Furthermore, Defendants assert Plaintiffs' comparison of conditions at SCCF with other facilities is not relevant to the substantive due process claim.  (*Id.*, at 14.)

Plaintiffs maintain the Due Process Clause prohibits "punishment" of a pretrial detainee prior to adjudication of guilt.  (Pls' Opp. Br., at 44.)  The test is met under three possible conditions: (1) a showing of Defendants' express intent to punish; (2) the condition is not rationally related to a legitimate non-punitive government purpose; or (3) the restriction is excessive in light of its purpose.  (*Id.* at 45, quoting *Autery v. Moore*, No. 22-CV-4105, at *8 (E.D. Pa. July 21, 2023) (additional citation omitted).

In this regard, Plaintiffs view is that being forced to wear a suicide vest without undergarments while under CCTV surveillance has no penological purpose.  (*Id.*, at 50.)  Also, constant illumination deprives them of sleep, which constitutes cruel and unusual punishment under the Eighth Amendment.  (Pls' Opp. Br., at 51.)  Further, the overcrowding conditions in the at-risk unit, with five to fifteen detainees in a cell designed for four people, sharing one toilet with others suffering from diarrhea and vomiting, without access to cleaning supplies, also constitutes cruel and unusual punishment.  (*Id.*, at 51-52.)  Plaintiffs contend the conditions, separately and in totality, constitute punishment under the Eighth Amendment.  (*Id.*, at 48-52.)

In reply, Defendants argue Plaintiffs have not sufficiently pled Defendants' express intent to punish. (Defs' Reply Br, at 7.) Therefore the Due Process claim in Count Four should be dismissed. (*Id.*)

Plaintiffs are not required to allege Defendants had an express intent to punish. It is sufficient if the allegations plausibly allege the conditions were excessive in light of the legitimate government purpose. Accepting Plaintiffs' allegations as true at the pleading stage, they were arbitrarily classified as at-risk, and therefore, their exposure to the harsher conditions in the at-risk unit to protect them from self-harm or harming others was arguably purposeless. The Court will deny Defendants' Motion to Dismiss as to this substantive due process claim in Count Four of the SAC.

**E.     New Jersey Law Against Discrimination Claim**

In Count Five of the SAC, Neimeister alleges he was arbitrarily classified as at-risk based on his disability of chemical dependence, in violation of the NJLAD [N.J. Stat. Ann. § 10:5-12(f)(1)] (SAC, ¶¶ 232-237.) Defendants assert this claim should be dismissed because Plaintiffs do not define chemical dependence. (Defs' Br., at 18.) Plaintiffs do not specifically address Defendants' challenge to Neimeister's NJLAD claim. (Pls' Opp. Br. at 52.)

"To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, (1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 477 (D.N.J. 2023) (cleaned up). The Court will dismiss Count Five because Plaintiffs have not sufficiently alleged Neimeister is a member of a protected class by reason of a demonstrable substance abuse disability. *See Fitzgerald*

*v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 236 (D.N.J. 2015) (quoting *Olson v. Gen. Elec. Astrospace*, 966 F. Supp. 312, 315 (D.N.J. 1997) (stating "substance abuse, obesity, breast cancer, and other conditions that are 'demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques' have been accepted as disabilities under the LAD" (additional citations omitted)). Dismissal of Count Five will be without prejudice, with leave granted for Plaintiffs to file a Third Amended Complaint to cure the deficiencies in this claim by pleading additional facts.

**F.    Fourteenth Amendment Deliberate Indifference to Medical Need Claim**

In Count Six of the SAC, Neimeister's individual claim, Plaintiffs allege John Doe Corrections Officers, on two occasions, knew or should have known Neimeister was suffering seizures and willfully disregarded his medical condition, causing him to suffer serious harm. (see generally SAC, ¶¶ 238-46.) Plaintiffs further alleged "Defendant fails to adequately train its employees to address known medical problems" (*id.*, ¶ 238), and "Defendants according to policy and practice disregarded Plaintiff's known need for medical supervision at Plaintiff's peril under the custody and control of Defendants" (*id.*, ¶ 241.)

Defendants maintain that Count Six, willful disregard of a known medical condition, should be dismissed for several reasons. (Defs' Br., at 16.) First, Defendants, as a State entity and State official, are immune. (*Id.*) Second, under the heading "Facts Unique to Plaintiffs Unique Claims[,]" the SAC does not specify to whom this claim applies. (*Id.*, at 16-17.) Finally, the SAC does not allege how Defendants knew or should have known of Plaintiff's chemical dependence or seizures. (*Id.*, at 18.) The SAC does not allege how Salem County or Cuzzupe, a non-medical defendant, were involved with Plaintiff's medical care or decisions. (*Id.*, at 18-19.) Plaintiffs only

offer conclusory allegations that "Defendants" failed to adequately train and supervise.  (*Id.*, at 19.)

In opposition to dismissal of Count Six, Plaintiffs argue Neimeister has sufficiently alleged John Doe Corrections Officers willfully disregarded his medical condition because they watched him having seizures and did nothing.  (Pls' Opp. Br, at 52.)  Defendants do not discuss Counts Five and Six of the SAC in their reply brief, but they argue the SAC should be dismissed with prejudice because amendment of the deficient claims would be futile.  (Defs' Reply Br., at 9.)

Defendants are not State entities and employees who are immune from suit under § 1983 and the NJCRA.  Salem County and John Cuzzupe, a Salem County employee sued in his official capacity, are "persons" who are subject to suit under § 1983 and the NJCRA.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 and n. 55 (1978) ("Local governing bodies" and local officials in their official capacities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief.")  Liability may be found

> where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. Relevant here, liability may attach to the County where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy[,]" *Bryan County*, 520 U.S. at 417, 117 S. Ct. 1382 (Souter, J., dissenting) and/or where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S. Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must

19

> "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Tucker v. City of Philadelphia*, 679 F. Supp. 3d 127, 141 (D.N.J. 2023) (alterations in original). Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd sub nom. on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (citation omitted). "Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (cleaned up). A plaintiff must identify a "deficiency in a [local government's] training program that "actually caused" the constitutional violation. *Id.* quoting *Canton*, 489 U.S. at 391. Plaintiff's bare allegation of Salem County's failure to train employees "to address known medical problems" does not sufficiently identify how Salem County's training program caused the alleged constitutional violation, particularly in light of Plaintiffs' allegation that he was transported to Salem Hospital twice for seizures. Therefore, Defendants' Motion to Dismiss as to Count Six of the SAC will be granted. Dismissal of Count Six will be without prejudice, with leave granted for Plaintiffs to file a Third Amended Complaint to cure the deficiencies in this claim by pleading additional facts.

## V.    <u>CONCLUSION</u>

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motion to Dismiss and grant Plaintiffs leave to file a Third Amended Complaint, within 30 days, to cure deficiencies in the claims that will be dismissed without prejudice. An appropriate order follows.

Date: December 27, 2024

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**