# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHAEL NEIMEISTER,** *et al.*, <br> *on behalf of all similarly situated individuals,* <br><br> Plaintiffs, <br><br> v. <br><br> **THE COUNTY OF SALEM,** *et al.*, <br><br> Defendants. | Civil Action No. 24-411 (ZNQ) (JBD) <br><br> **OPINION** |

**QURAISHI, District Judge**

Before the Court is a Motion to Dismiss and/or Strike filed by Defendants John S. Cuzzupe and the County of Salem (collectively "Defendants"). ("Motion", ECF No. 31.) Plaintiffs Michael Neimeister, Matthew Brangan, and Kenneth Romalino, on behalf of themselves and a proposed class, (collectively "Plaintiffs") filed a Brief in Opposition. (ECF No. 32.) Defendants filed a Reply. (ECF No. 33.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Court will GRANT IN PART and DENY IN PART the Motion.

## I.    THIRD AMENDED COMPLAINT[1]

Plaintiffs brought this civil rights action under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. § 10:6-1, *et seq.*, on behalf of a proposed class of all similarly situated pretrial detainees in the Salem County Correctional Facility ("SCCF") who were classified as "at-risk"

---

[1] The Third Amended Complaint is a repetition of the facts alleged in the Second Amended Complaint, with additional facts attempting to cure the deficiencies noted by the Court in its prior decision. (*See* ECF No. 21). As such, the Court adopts the summary of the facts noted in its previous decision and highlights the additional facts from the Third Amended Complaint here.

pursuant to SCCF's suicide identification and prevention policy. (ECF No. 24). Plaintiffs' claims arise from alleged unconstitutional classification and search practices at the Salem County Correctional Facility ("SCCF") in Woodstown, New Jersey. Named Plaintiffs Michael Neimeister, Matthew Brangan, and Kenneth Romalino are all former pretrial detainees. They bring suit on behalf of themselves and similarly situated individuals who were designated "at-risk" under the jail's Suicide Identification and Prevention Policy and subjected to a regime of strip searches, surveillance, and restrictive conditions. (ECF No. 24 at 1–4.)[2]

According to the Third Amended Complaint, Salem County's Suicide Identification and Prevention Policy is *ultra vires* under New Jersey law because it was not approved by a qualified mental-health professional as required by N.J. Admin. Code § 10A:31-8.5. (*Id.* at 1–2, 12.) Plaintiffs allege that the policy results in the arbitrary overclassification of detainees as "at-risk," triggering intrusive and punitive conditions of confinement. Detainees so classified are subjected to constant video monitoring, serial strip searches, mandatory suicide gowns, and confinement in unsanitary, brightly lit, and cold cells. (*Id.* at 1–2, 13–14.)

Upon intake, detainees undergo a strip search and body scan. Those deemed "at-risk" are placed in a booking cell under 24-hour camera surveillance and later escorted to the "at-risk" unit, where they are strip searched again, despite having had no opportunity to obtain contraband. (*Id.* at 10–12.) Plaintiffs allege that these detainees are thereafter strip searched twice daily—at approximately 7:00 a.m. and 7:00 p.m.—under active CCTV recording visible to officers and other detainees. (*Id.* at 10–11, 19–20.)

The Complaint asserts that these searches are unreasonable under the Fourth Amendment, serve no custodial purpose, and contravene state regulations limiting electronic surveillance and

---

[2] For clarity, the Court cites to the Third Amended Complaint by page number from CM/ECF rather than by numbered paragraphs because the pleading repeats certain paragraph numbers.

searches. Plaintiffs further allege that the searches are often conducted in view of other inmates and opposite-sex staff, compounding the humiliation. (*Id.* at 11–13, 19–20.)[3]

Plaintiffs claim that detainees classified as "at-risk" are forced to wear worn and ill-fitting anti-suicide gowns without undergarments, endure constant lighting and freezing temperatures, and live under 24/7 electronic surveillance that is streamed to as many as fifteen to twenty locations throughout the facility. (*Id.*, at 18–19, 21–22.) Cells in the unit are allegedly overcrowded, housing five to fifteen detainees with one undivided toilet, and often contain individuals suffering from drug withdrawal, vomiting, and diarrhea. Plaintiffs allege that they were denied cleaning materials and required to eat meals beside the toilet in unsanitary conditions. (*Id.*, at 19–20, 29–30.)

Plaintiffs contend that the Warden, John S. Cuzzupe, designed the suicide-screening questionnaire himself, assigning point values to approximately thirty "yes/no" questions without any clinical basis or professional validation. (*Id.*, at 15–16.) Detainees scoring above fifty points are automatically designated "at-risk." Plaintiffs allege that mental-health provider Center for Family Guidance (CFG) repeatedly advised the Warden that the instrument was overinclusive and arbitrary, but the County refused to change its procedures. (*Id.*, at 15–17.) CFG allegedly threatened to terminate its contract because of the policy's overclassification problem. (*Id.*, at 16–17.)

Plaintiffs maintain that hundreds or thousands of detainees are wrongfully classified each year, producing conditions of confinement that differ substantially from those of general population inmates, and amount to punishment of pretrial detainees in violation of the Fourteenth Amendment. (*Id.* at 13–14, 17.)

---

[3] The Court had already proceeded Plaintiff's claim regarding strip searches that were conducted under video surveillance and without an opportunity to obtain contraband between searches. The Court dismissed without prejudice Plaintiffs' Fourth Amendment claim regarding "routine strip searches". (*See* ECF No. 21 at 10–12).

Neimeister was detained at SCCF in February 2022.  After being strip searched at intake, he was designated "at-risk," transferred to the unit, and strip searched again.  (*Id.* at 21–23.)  He was forced to wear an ill-fitting suicide vest and confined under constant surveillance.  Twice daily, he was subjected to additional strip searches in view of others.  (*Id.* at 22–23.)

Neimeister also alleges that he entered the facility with a diagnosed opioid use disorder and anxiety disorder and was prescribed Suboxone and Xanax.  Despite alerting staff to his medical needs and identifying his pharmacy, he allegedly received no medication, began to suffer severe withdrawal, and was left untreated while under camera observation.  (*Id.* at 24–25.)  When he experienced seizures, officers allegedly restrained and assaulted him rather than seeking medical care.  (*Id.* at 25–26.)  He was later hospitalized in a comatose state for several days, returned to the jail, and again denied medication, resulting in recurrent seizures and readmission to the hospital.  (*Id.* at 26–27.)  He claims lasting psychological injury because of the Defendants' willful indifference to his medical needs.  (*Id.* at 27.)

Plaintiff Brangan was detained at SCCF within the two years preceding the Complaint.  After intake, he was classified as "at-risk" under the same questionnaire, strip searched multiple times, and forced to wear a nonfunctioning suicide vest without undergarments. (*Id.* at 27–29.) He also describes overcrowded, filthy conditions similar to those alleged by Neimeister: one toilet for fifteen detainees, no cleaning supplies, and 24-hour illumination.  (*Id.* at 29–30.)  He asserts that a mental-health professional later determined he was not suicidal, but he remained in the "at-risk" unit due to withdrawal symptoms after being denied prescribed medication.  (*Id.* at 30–31.)

Plaintiff Romalino was admitted in September 2023.  He, too, was strip searched upon entry, classified as "at-risk," and strip searched again upon transfer to the unit.  (*Id.*, at 31–32.)  He alleges that he was held for three days in an overcrowded, unsanitary cell with up to fifteen

detainees, constant lighting, and CCTV surveillance visible to staff of both sexes. (*Id.* at 32–33.) Like others, he was denied undergarments and subjected to twice-daily strip searches. He was eventually evaluated by a mental-health professional and transferred to another facility, where the "at-risk" classification was dropped. (*Id.* at 33–34.)

Plaintiffs claim that Salem County's policies demeaned, humiliated, and degraded them and other detainees, causing emotional and psychological distress. (*Id.* at 14, 18–19.) They assert the following claims: Unreasonable Search and Seizure (Count I); "Unlawful Punishment" (Count III); Violation of NJLAD as to Neimeister (Count IV); and "Willful Disregard of a Known Medical Condition"[4] as to Neimeister (Count V).[5] Plaintiffs seek class-wide declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees. (*Id.* at 34–45.)

## II.    DISCUSSION

### A.    MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 560 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* Plausibility is "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 557).

---

[4] The Court construes Count V as one for deliberate indifference of a known medical condition.
[5] The Third Amended Complaint does not plead a Count II.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal.*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . ." *Twombly*, 550 U.S. at 555. However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citation modified). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

1. <u>All Counts: Class Identification Between Indictable and Non-indictable Detainees</u>

Defendants argue that because Plaintiffs have failed to distinguish between indictable and non-indictable detainees—who are subject to different standards with respect to strip searches— and because they have failed to allege which Class each Named Plaintiff falls under, they have failed to properly state a claim for relief. (ECF No. 31 at 11). Plaintiffs oppose, arguing that this distinction between indictable and non-indictable detainees is an "inconsequential distinction" and that Defendants ignore the Court's prior ruling that Class claims are not dismissed on procedural grounds. (ECF No. 32 at 21). In addition to arguing Defendants' arguments are flawed and not

based in caselaw, Plaintiff argues that it is premature to decide the definitions and membership of the proposed Class. *Id.* The Court agrees.

As stated in the Court's prior Opinion, "In this District, 'dismissal of class allegations at [the pleading] stage should be done rarely and [] the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (quoting *Horowitz v. AT&T Inc.*, Civ. No. 3:17-cv-4827, 2018 WL 1942525, at *17 (D.N.J. April 25, 2018)). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Id.* (quoting *McPeak v. S-L Distrib. Co.*, Civ. No. 12-348, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (citations omitted)).

Insofar as the arguments raised by Defendants related to the indictable and non-indictable classification of Plaintiffs are premature at this stage, [6] the Court will DENY this portion of the Motion.

### 2. Count IV: New Jersey Law Against Discrimination Claim

In Count IV of the Third Amended Complaint, Neimeister again alleges that Defendants arbitrarily classified him as "at-risk" based upon his chemical dependance, thereby discriminating against him in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5- 12(f)(1). (ECF No. 24 at 32). Defendants respond that they did not discriminate against Neimeister by placing him on "at-risk" status, and that he has failed to articulate how the classification was discriminatory. (ECF No. 31 at 19). The Court had previously dismissed this

---

[6] Defendants likewise concede that arguments as to which detainees are at-risk and which are not at-risk is premature. (*See* ECF No. 31 at 13) ("While these arguments are premature, it is worth noting for the Court at this time to provide some context for the inadequacy of the pleading as crafted.").

claim without prejudice because Neimeister did not sufficiently allege he was a member of a protected class by reason of a demonstrable substance abuse disability. (ECF No. 21 at 17–18). The Court granted him leave to allege additional facts to prove that he was a member of a protected class. *Id*.

The Court construes Neimeister's claim as one for discrimination in the provision of a public accommodation. "To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, (1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 477 (D.N.J. 2023) (citation modified). A plaintiff who has a chemical dependence may be considered a member of a protected class. *See Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 236 (D.N.J. 2015) (quoting *Olson v. Gen. Elec. Astrospace*, 966 F. Supp. 312, 315 (D.N.J. 1997) (stating "substance abuse, obesity, breast cancer, and other conditions that are 'demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques' have been accepted as disabilities under the LAD" (additional citations omitted)).

Here, Plaintiffs have alleged additional facts in the Third Amended Complaint, but these additional facts are conclusory at best and fail to show that Neimeister's chemical dependance rose to the level of a protected class. Specifically, Neumeister again alleges that he was diagnosed and treated for opiate withdrawal disorder and an anxiety disorder requiring monitoring and treatment, that he was diagnosed with the condition by a doctor and obtained legitimate treatment for it prior to his admission to jail, and that treatment was ongoing upon his admission to jail. (ECF No. 24 at 37-38). But Neimeister does not support any of these bald assertions. By his own admission, his withdrawal disorder required "monitoring and treatment." As Defendants contend, classifying

Neimeister as "at-risk" arguably served to assist him rather than discriminate against him.  (ECF No. 31 at 19-20).  Therefore, Neimeister has again failed to allege sufficient facts to prove that he is a member in a protected class.

Even assuming, *arguendo*, that Neimeister is a member of a protected class, his claim still fails because he does not allege sufficient facts that he was denied equal treatment on the basis of his membership in a protected class.  On this point, Neimeister alleges that Defendants discriminated against him by denying him medical treatment.  (ECF No. 24 at 37.)  Yet Neimeister also alleges that he did receive certain medical treatments.  (ECF No. 24 at 25–26.)

Accordingly, the Court will GRANT this portion of Defendants' Motion and again dismiss without prejudice Count IV of the Third Amended Complaint.

### 3.  Count V: Deliberate Indifference to Medical Need Claim

In Count V of the Third Amended Complaint, Neimeister alleges that Defendants, on two occasions, knew or should have known he was suffering seizures and they willfully disregarded his medical condition, causing him to suffer serious harm. (*See generally* ECF No. 24 at 40-42). Neimeister further alleges that Defendant fails to adequately train its employees to address known medical problems, and that Defendants' policy and practice disregarded Plaintiff's known need for medical supervision. *Id*. Defendants argue that this count should be dismissed because Plaintiff was transported to a hospital for treatment on several occasions.  (ECF No. 31 at 22).  The Court previously dismissed this claim without prejudice because Plaintiff did not allege specific facts that sufficiently identified how Salem County's training program caused the alleged constitutional violation.  (ECF No. 21 at 20).

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care.  *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). To state a claim for deliberate indifference, a pretrial detainee must allege: (1) a serious

medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Here, Plaintiff alleges sufficient facts to plausibly plead that Defendants willfully disregarded his medical needs. Indeed, Plaintiff alerted staff to his medical needs and identified his pharmacy, but he allegedly did not receive the necessary medication to handle his withdrawal symptoms (ECF No. 24 at 24-25). As a result of not receiving his medication, Plaintiff claims he was vomiting, suffering from diarrhea, experienced sweats, shaking and hallucinations – all symptoms that Plaintiff alleges were a result of his withdrawal. (ECF No. 24 at 42). At one point, Plaintiff claims he was suffering from seizures so severe that Defendants zip tied Plaintiff to the chair. *Id*. Although Plaintiff acknowledges he was eventually transported to a hospital for treatment, Plaintiff has alleged sufficient facts at this stage to plausibly plead that Defendants willfully disregarded his medical needs. His individual claim against Defendants will therefore proceed at this time.

### B.    MOTION TO STRIKE

Defendants separately request that the Court strike Plaintiffs' references to *Stevenson* and *Price* – two prior State Court class action lawsuits against Defendants that addressed at-risk and strip search claims from 2015 to 2020. (ECF No. 31 at 10). Defendants claim that the deposition testimony from these two lawsuits that Plaintiffs include in their complaint is impertinent because Plaintiffs' alleged claims occurred two years *after* the timeframe at issue in these lawsuits. *Id*.

Plaintiff argues that the request to strike is inappropriate at the pleading stage, and that the included deposition testimony is relevant to show that Defendants had a long-standing knowledge of the alleged unconstitutional policies, which is a necessary element in a *Monell* theory claim. (ECF No. 32 at 25).

Next, Defendants request that Plaintiff Neimeister's references to claims of assault and being zip tied should be stricken as scandalous and inappropriate for a class action. (ECF No. 31 at 17). Defendants further claim that these allegations are simply not true, and that further discovery will not reveal that this incident occurred. *Id*. Plaintiffs oppose striking this incident and argue that this incident is relevant for Plaintiff Neimeister's claim regarding failure to treat his known medical condition. (ECF No. 32 at 28). The Court agrees with Plaintiffs.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because of the drastic nature of the remedy, however, motions to strike are usually "viewed with disfavor" and will generally "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Tonka Corp. v. Rose Art Industries, Inc.,* 836 F. Supp. 200, 217 (D.N.J.1993). Indeed, striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Id*.

Furthermore, relief under Rule 12(f) often will not be granted where the challenged allegations depend on disputed issues of fact, due to the "practical difficulty of deciding cases without a factual record." *Tonka Corp.,* 836 F. Supp. at 217 (quotation and citation omitted); *see also United States v. Sensient Colors, Inc.,* 580 F. Supp. 2d 369, 374 (D.N.J.2008) (noting reluctance of courts to grant Rule 12(f) motions "out of a concern that they often involve a premature evaluation of a defense's merits"). Even if facts are not in dispute, courts should not use a Rule 12(f) motion "to determine disputed and substantial questions of law." *Tonka Corp.,* 836 F. Supp. at 218.

Here, although the assorted testimony that Defendants seek to strike is from a prior timeframe, that testimony is certainly relevant to the matter here.  At the very least, the testimony is relevant background evidence as it relates to the same conduct that Plaintiffs allege occurred to them two years later.  This supports the notion that Defendants were aware of the suspect strip searches that the Court has already proceeded. (*See* ECF No. 21 at 11).

It would also be improper to strike the allegation that Plaintiff Neimeister was zip tied.  As will be discussed below, the allegation supports his claim for deliberate indifference to a medical need.  Defendants' argument that it should be stricken because this incident "is simply not true" cannot suffice.  Whether this incident occurred is a disputed issue of fact.  At this stage, the Court is required to accept as true all factual allegations in the complaint.

Accordingly, the testimony submitted by Plaintiffs and their recitation of the alleged zip tie incident will not be stricken from the Third Amended Complaint at this time.  Defendants' request to strike will therefore be DENIED.

## III.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART the Motion.  The Court will grant the portion of the Motion seeking dismissal of Count IV and deny the remainder of the relief sought.  Count IV will be DISMISSED WITHOUT PREJUDICE.  Plaintiffs will be given leave to file a Fourth Amended Complaint within 30 days, limited to addressing the deficiencies identified with respect to Count IV.  An appropriate order will follow.


Date: October 31, 2025

                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**